UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INVENTVEST LLC )<br> )<br> Plaintiff, )<br> )<br>vs. )<br> )<br>ASB GLASSFLOOR AMERICA, INC., AND )<br>ASB SYSTEMBAU HORST )<br>BABINSKY GMBH )<br> )<br> Defendants. )<br> )<br> )<br> ) | Civil Action No.: 1:25-cv-2769<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Inventvest LLC ("Inventvest"), by its undersigned attorneys, alleges the following for its Complaint against Defendants ASB GlassFloor America, Inc., and ASB Systembau Horst Babinsky GmbH (collectively "ASB" or "Defendants"):

### Parties

1. Inventvest LLC is a limited liability company existing under the laws of the state of Michigan and has a registered address in Ortonville, MI.

2. Defendant, ASB GlassFloor America, Inc. is a corporation organized and existing under the laws of the state of New York and has an address at 350 5th Ave. Suite 5220 New York, NY 10188.

3. Defendant ASB Systembau Horst Babinsky GmbH is a company with limited liability organized and existing under the laws of Germany and has an address at Fabrikstrasse 14, 83371 Stein, Germany.

1

**Jurisdiction and Venue**

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States (Title 35 of the United States Code).

5.      This Court has personal jurisdiction over Defendants because Defendant ASB GlassFloor America, Inc resides in this District and Defendants conducted and continue to conduct business in this judicial district.  In addition, Defendants have engaged in activities related to Inventvest's claims of patent infringement.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) over Defendant ASB GlassFloor America, Inc because it resides in this District.  Venue is proper in this district over ASB Systembau Horst Babinsky GmbH to pursuant 28 U.S.C. § 1391(c) because it is not resident in the United States and may be sued in any judicial district.

**Technological Background**

7.      Wood floors have traditionally been used for sporting events, such as basketball games.  Such floors typically include lines painted on the wood floor to mark the boundaries of the playing surface.  Such floors may also have designs, logos or other advertisements painted on the surface. These images are semi-permanent.  Over time, the floors must be sanded and repainted to maintain the lines, designs, logos, or advertisements on the floors.

8.      Some traditional wood floors are portable and are designed to be assembled, and removed. The floors are made of a plurality of interconnected panels. By using such panels, the floor can be removed when not needed and the facility housing the flooring may be used for a different event.

9. The wood panels are placed on a substrate, such as concrete. Each panel may include a stringer, which is a support for the playing surface and is used to space the playing surface from the substrate, such as concrete.

10. The desire to display images on the floor surface in a way that the displayed image can be changed is ever increasing. Advertisers desire to display their brands on the floor surface, whether they are on the actual playing surface itself, or on the aprons (the area of the floor outside the playing surface). It is highly desirable to allow the displayed image to change. Further, it is also desirable that the entire floor surface be illuminated. In this way, the game lines can be changed to allow different sports to be played on the same surface. In this type of floor, traditional wood floor panels are replaced by LED illuminated monitors. The monitors can be used as the interconnected panels that make up the floor surface. The lighting for such floors is contained under the top of the floor surface.

11. In other floors, it may be desirable to have a floor surface where only a portion of the floor is illuminated. In such floors, the game lines, for example, may be the only illuminated area of the floor.

12. The inventors of the asserted patent developed a floor system that accomplishes both desired effects. In an embodiment only a portion of a floor is illuminated, such as the game lines. In another embodiment, the traditional wood floor is replaced by a video monitor.

13. The inventors patented their novel and nonobvious lighted floor.

### Inventvest's U.S. Patent No. 7,913,579 B2

14. Inventvest is the owner by assignment of U.S. Patent No. 7,918,579 B2 entitled "Lighted Flooring," hereafter "the '579 Patent," including the right to sue and recover for past

3

infringements of the '579 Patent. A true and accurate copy of the '579 Patent is attached as Exhibit A.

15. The '579 patent was duly and lawfully issued on April 11, 2011 and remains in full force and effect.

16. In general, the '579 Patent is directed to a floor that includes a light source, such as LEDs are located below the top surface of the floor and the light passes through the top surface. In an embodiment only certain areas of the floor contain such a light source to illuminate a portion of the floor. In another embodiment, the light source comprises a monitor. While the brief description is provided, the specification and the claims of the '579 patent identify what is described and claimed. (No claim construction is intended or implied, and the following paragraphs relating to the description are by way of introduction only.) This description is to very generally introduce certain components that may be included in the claimed invention and described in the specification.

17. Figure 1 of the '579 Patent shows an embodiment of a floor where only a portion of the floor is illuminated. Figure 8 shows another embodiment where the light source is a monitor.

18. Claim 1 of the '579 Patent recites:

A floor assembly comprising:

    a top forming at least a portion of a floor surface and having at least one light emitting portion;

    at least one light source disposed below said light emitting portion and coupled with said at least one light emitting portion; and

    said light emitting portion comprising a light refracting portion, to direct light from the light source at multiple angles.

19. Claim 7 of the '579 Patent recites: A floor assembly as set forth in claim 1 wherein said light source comprises a monitor. As claim 7 depends from claim 1, it includes all the limitations of claim 1.

## The Accused Products

20. Defendants make, use, offers for sale, sells and/or imports products into the United States that infringe claims of the '579 Patent.

21. For example, Defendants make, use, offers for sale, sells, and/or imports its ASB LumiFlex product https://asbglassfloor.com/asb-lumiflex/, which is touted as "The world's first full LED video sports floor made of glass." ASB's LumiFlex.

22. Defendants' LumiFlex product is shown:



23. Defendants make, use, offers for sale, sells, and/or imports its ASB MultiSports product https://asbglassfloor.com/asb-multisports/.

5

24. Defendants' MultiSports product is shown:



25. The descriptions of Defendants' products are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. Inventvest reserves the right to modify this description, including, for example, based on information about the Accused Products obtained during discovery.

## Count I — Direct Infringement of the '579 Patent

26. Inventvest repeats and realleges the allegations contained in paragraphs 1 through 25 as if fully set forth herein.

27. Defendants' LumiFlex floor is lighted floor assembly as claimed in the '579 patent.

28. Defendants' LumiFlex floor includes all the elements of claims of the '579 including, but not necessarily limited to claims 1 and 7.

| '579 Patent Claims 1 and 7 | Defendants' ASB LumiFlex Lighted Floor |
|---|---|
| 1. A floor assembly comprising: | ABS LumiFlex |

| | |
|---|---|
| a top forming at least a portion of a floor surface and having at least one light emitting portion |  |
| at least one light source disposed below said light emitting portion and coupled with said at least one light emitting portion | |
| said light emitting portion comprising a light refracting portion, to direct light from the light source at multiple angles. | |

| | |
|---|---|
| 7. A floor assembly as set forth in claim 1 wherein said light source comprises a monitor. |  |

29.     Defendants also make, use, offer for sale, sell and import into the United States its ASB MultiSports floor which is a lighted floor assembly as claimed in the '579 patent.

30.     Defendant's system includes all the elements of claims of the '579 including, but not necessarily limited to claims 1 and 7.

31.     Defendants' MultiSports floor is shown:



32.     The MultiSports floor has all the same claimed features set forth above in connection Defendants' LumiFlex Product.

33.     Defendants tout that its MultiSports floor "features customizable LED game lines activated via touchscreen and the lines can be turned off for special events.

8

34. Defendants have directly infringed, and continues to directly infringe, at least claims 1 and of the '579 Patent in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling its accused floors, and will continue to infringe unless enjoined by this Court.

35. Defendants are aware that the accused devices infringe at least claims 1 and 7 of the '579 Patent. In March of 2024, Inventvest sent Defendants letters offering Defendants the opportunity to take a license under the '579 Patent, Exhibits B and C, respectively. Defendants failed to respond to the March 2024 letters.

36. In October of 2024, Plaintiff sent Defendants follow up cease and desist letters again making Defendants aware of their infringement of the '579 Patent. Exhibits D and E, respectively.

37. Counsel for Defendants replied to Inventvest on October 24, 2024 stating that Defendants "are reviewing your letters, and we will respond in due course." Exhibit F. Notably Defendants did not respond.

38. On January 27, 2025, Plaintiff again contacted Defendants (through) its counsel asking for a reply to the October letters. Exhibit G.

39. Two days later, Defendants' counsel finally replied and stated the position that "it is evident that ASB's flooring solution is not covered by any valid claim of the '579…patent." Exhibit H. This letter fails to state that no claim is infringed. The letter fails to identify any prior art which would render any claim of the '579 patent invalid.

40. Defendants' infringing conduct has caused, is causing, and will continue to cause irreparable injury to Inventvest unless such infringing conduct is enjoined by this Court.

9

41. Defendants knowingly and intentionally infringed and continue to infringe at least claims 1 and 7 of the '579 Patent, by virtue of its prior knowledge of the '579 patent and Inventvest's claim of infringement.

**Count II — Indirect Infringement of the '579 Patent**

42. Inventvest repeats and realleges the allegations contained in paragraphs 1 through 41 as if fully set forth herein

43. Defendants have indirectly infringed, and continue to indirectly infringe, at least claims 1 and 7 of the '579 Patent under 35 U.S.C. § 271(b) by actively inducing third parties to infringe. Defendants' inducement was with full knowledge that they each infringed at least claims 1 and 7 of the '579 patent.

44. Third parties that were induced by Defendants and that directly infringed at least claims 1 and 7 of the '579 patent include, the National Basketball Association,



Rupp Arena



The "pop up" location in Orlando, FL.



45.     Defendant s' infringing conduct has caused, is causing, and will continue to cause irreparable injury to Inventvest unless such infringing conduct is enjoined by this Court.

46.     Defendants knowingly and intentionally induced infringement and continue to induce infringement of at least claims 1 and 7 of the '579 Patent, by virtue of its prior knowledge of the '579 Patent and allegations of infringement.

## RELIEF REQUESTED

WHEREFORE, Inventvest respectfully requests that this Court enter a judgment that:

A.      Finds Defendants have directly infringed, and are directly infringing, one or more claims of the '579 Patent;

B.   Finds Defendants have indirectly infringed, and is indirectly infringing, one or more claims of the '579 Patent;

C.   Awards Inventvest damages adequate to compensate for Defendant's infringement of the '579 Patent under 35 U.S.C. § 284 of not less than a reasonable royalty and increases those damages up to three times;

D.   Finds this case exceptional as set forth in 35 U.S.C. § 285;

E.   Awards Inventvest its attorneys' fees;

F.   Orders Defendants and their officers, directors, agents, servants, employees, successors, assigns, and all persons in active concert or participation with Defendants, be preliminarily and permanently enjoined from infringing the '579 Patent pursuant 35 U.S.C. § 283;

G.   Awards Inventvest costs, pre-judgment, and post-judgment interest at the maximum allowable rate; and

H.   Awards Inventvest such further relief as the Court deems just and proper.

Respectfully submitted,

Dated:   April 3, 2025

By: */s/ Richard W. Hoffmann*
RICHARD W. HOFFMANN (P42352)
Reising Ethington PC
755 W. Big Beaver Road, Suite 1850
Troy, Michigan 48084
Telephone: (248) 689-3500
E-mail:  hoffmann@reising.com

*Attorneys for Inventvest LLC.*

**JURY TRIAL DEMANDED**

Inventvest demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: April 3, 2025

By: */s/ Richard W. Hoffmann*
RICHARD W. HOFFMANN (P42352)
Reising Ethington P.C.
755 W. Big Beaver Road, Suite 1850
Troy, Michigan 48084
Telephone: (248) 689-3500
E-mail: hoffmann@reising.com

*Attorneys for Inventvest LLC*